DELAWARE, L. & W. R. CO. v. GLEASON et al.

(Circuit Court of Appeals, Third Circuit. February 17, 1908.)

No. 58.

1. MINES AND MINERALS—DEEDS—"COAL BED"—"COAL VEIN."

Where a deed conveyed all that certain "coal bed" on Lackawanna creek on lot No. 1, occupied by W., the word "coal bed" was synonymous with "coal vein," and passed to the grantee the entire bed or vein of coal, and not a parcel or piece thereof.

2. SAME—CONSTRUCTION.

Where a deed conveyed all that certain coal bed on Lackawanna creek on lot No. 1 now occupied by W., the expression "all that certain coal bed" was indicative of an entirety; the phrases "on the Lackawanna creek," "on lot No. 1," and "now occupied by W." being merely used to identify the thing conveyed, and not to divide nor define its extent.

3. EVIDENCE—PAROL EVIDENCE—VARYING WRITTEN CONTRACT—DEEDS.

Where the description in a deed as to the property conveyed was not ambiguous, parol evidence of an agreement as to the boundaries of the property conveyed to vary the contents of the deed was inadmissible.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 1719–1728.]

4. SAME—RES INTER ALIOS ACTA.

In ejectment to recover an undivided one-half of a vein of coal, certain deeds, in no way connected with the deed under which defendant claimed title, and which also did not tend to maintain plaintiff's theory, were incompetent for any purpose.

In Error to the Circuit Court of the United States for the Middle District of Pennsylvania.

For opinion below, see 151 Fed. 321.

E. N. Willard and John G. Johnson, for plaintiff in error.

James H. Torrey and S. P. Wolverton, for defendants in error.

Before DALLAS and GRAY, Circuit Judges, and CROSS, District Judge.

DALLAS, Circuit Judge. In this opinion the parties will be designated in accordance with their respective positions in the court below, where the defendants in error were plaintiffs, and the plaintiff in error was defendant. The action was ejectment for "the equal undivided one-half part of * * * a certain stratum, vein, or seam of anthracite coal, commonly known as the 'G Vein,' or the 'Big Vein,' lying and being under the surface of the piece or parcel of land" described in the writ. At the close of the trial the court, reserving the question "whether upon the whole case the verdict should not be for the defendant," directed a verdict for the plaintiffs, which accordingly was rendered. Subsequently a motion by defendant for judgment in its favor non obstante veredicto was denied, and the judgment now for review was entered for the plaintiffs.

Both parties claimed through mesne conveyances from Albert Felts. The plaintiffs deduced to themselves a prima facie title to the parcel of land beneath the surface of which the G vein extends; but the defendants set up a title of earlier origin, founded upon a deed by Albert Felts to John Wilson, which is copied in the margin;[1] and a

[1] Albert Felts to John Wilson.

This indenture, made this 29th day of November, in the year of our Lord one thousand eight hundred and twenty-three, between Albert Felts, of the township of Providence, in the county of Luzerne, in the Commonwealth of Pennsylvania, of the one part, and John Wilson, of the township of Pittston, in the county and Commonwealth aforesaid, of the other part.

Witnesseth that the said Albert Felts, for and in consideration of the sum of three hundred dollars, money of the United States, to him in hand paid by the said John Wilson at and before the ensealing and delivery hereof, the receipt and payment whereof he doth hereby acknowledge, hath granted, bargained, sold, aliened, enfeoffed, released, conveyed and confirmed, and by these presents doth grant, bargain, sell, alien, enfeoff, release, convey and confirm, unto the said John Wilson all that certain coal bed on the Lackawanna creek on lot No. 1, in the township of Providence aforesaid, now occupied by the said Wilson, together with a road and cartway to and from the said coal bed to the public road through said lot of land No. 1, with egress and regress to and from the said coal bed along the said road to the said public road free and clear from him, the said Albert Felts, his heirs and assigns, forever.

To have and to hold the said coal bed and road or cartway hereby granted or released or mentioned, or intended so to be, unto the said John Wilson, his heirs and assigns, to the only proper use, benefit and behoof of him, the said John Wilson, his heirs and assigns, forever.

And the said Albert Felts, for himself and his heirs, executors, and administrators, doth covenant, promise, grant and agree to and with the said John Wilson, his heirs and assigns, by these presents that the aforementioned coal bed and road to the said John Wilson, his heirs and assigns, against him, the said Albert Felts, and his heirs, and every other person claiming the same by, through or under them, will warrant and forever defend.

In witness whereof, I have hereunto set my hand seal, dated the day and year first above written.                     Albert Felts. [Seal.]
Signed, sealed and delivered in presence of us
        Comer Phillips.
        Ebzr. Slocum.

Received, on the day of the date of the above indenture and from the above-named John Wilson, the sum of three hundred dollars in full for the consideration money above mentioned.                     Albert Felts.
Witness:

Commonwealth of Pennsylvania, Luzerne County—ss.:

Before the subscriber, one of the justices of peace in and for the said county, personally came Albert Felts, the signer and sealer of the above indenture, and acknowledged the same to be his free act and deed, desiring it may be recorded as such.

Given under my hand and seal at Providence, November the 29, 1823.
                                Ebzr. Slocum, J. Peace. [Seal.]
Recorded 9 January, 1824. Exd.

Commonwealth of Pennsylvania, Luzerne County—ss.:

I, Michael C. Russell, recorder of deeds, etc., in and for said county, do hereby certify the above and foregoing to be a true and correct copy of a conveyance from Albert Felts to John Wilson in full and complete as the same remains of record in Deed Book No. 22, page 593, etc., in my office.

Witness my hand and official seal at Wilkes-Barre, Pa., this second day of February, 1894.                     M. C. Russell, Recorder,
                                        Per T. C. Mullally.

principal and decisive question in the case is: Did this deed convey to John Wilson the body of coal in dispute? In terms it conveyed "all that certain coal bed on the Lackawanna creek, on lot No. 1, * * * now occupied by the said Wilson"; and in this designation and description there is no ambiguity, either patent or latent. A coal bed is specified, and the particular coal bed intended does not become doubtful when the descriptive words are related to the subject-matter, for they are precisely applicable to the "stratum, vein, or seam" now claimed by the plaintiffs. They, however, contend that the name "coal bed" was not intended to apply to the whole of this stratum, vein, or seam, but only to a part of it, and to this contention we have given careful consideration.

Seeking in the first instance, as we must, to ascertain the scope of the words "coal bed" without reference to extrinsic evidence, no real difficulty confronts us. As we have said, these words are not ambiguous. Their plain meaning is, and always has been, a bed of coal, just as the meaning of "coal vein" is a vein of coal, and never could have been anything else. A "bed" has been well defined as being "synonymous with vein." It is not a section or piece of one. Still it has been suggested that the words "coal bed" were here used in a peculiar sense, and if, from the context, this appeared to be true, such peculiar sense should be accepted; but, in reality, there is nothing in the deed to warrant a surmise that they were used in any sense other than their ordinary one. The expression "all that certain coal bed" is plainly indicative of an entirety, and not of a part, and the phrases, "on the Lackawanna creek," "on lot No. 1," and "now occupied by said Wilson," simply identify the thing conveyed. They neither divide it nor define its extent. They particularize the subject-matter, but do not limit or abridge it. The circumstance that a certain road was granted in connection with the coal is devoid of significance. It may be inferred that the use of that road in removing the coal was anticipated; but to deduce from such an inference an intent at variance with the express terms of the paramount grant is not reasonably nor legally possible. As, then, the words in question are common words, having a plain meaning, which, so far as the context shows, is the meaning that was intended, there is no necessity, and consequently no warrant, for interpreting them. The office of construction is to resolve doubts, not to create them; and extrinsic evidence, though it may be resorted to, when requisite, to determine the meaning of expressions not commonly intelligible, is never admissible for the purpose of showing that the parties to a deed meant something which they did not say, or anything different from that which they did say. Yet, as several supposed "aids to construction" have been earnestly pressed upon our attention, we will briefly refer to them.

When the deed to John Wilson was made, he was not in the actual occupancy of the entire coal bed; but it was not possible, nor is it requisite, that he should have been. For the purpose of identification, at least, his occupation of a part was sufficient. Importance, too, has been ascribed to his method of taking the coal; the one side

asserting that he merely quarried it, and the other that he drove a gangway for some distance under ground. But what has this to do with the extent of the grant? Certain it is that a "coal bed" was conveyed, and that the grantee took it, whatever its extent, in absolute fee simple, and with the right to work it as he pleased. If a "quarry," or a license to quarry, had been intended, nothing could have been more easy than to say so, and nothing more obvious than the necessity for a specific statement of the limits of the quarry referred to. But the deed contains no such thing, and we are not at liberty to guess what it might have contained, if at the time it was made the deposit of coal to which it related had been thoroughly known and fully appreciated.

The testimony of Isaac B. Felts, which, in the brief for defendant in error, is stated to have been "substantially to an agreement between John Wilson and Albert Felts as to the boundaries of the coal bed," should have been excluded. It may be conceded that adjoining owners can so settle the location of a boundary line upon the land as to conclude those claiming under them; but what really was sought in this instance was, not to show an agreed application of the terms of the deed to its subject-matter, but to vary its contents, and for such a purpose oral evidence is never admissible.

The court below, in an opinion which was filed on February 11, 1907, mentioned that, "in addition to the oral testimony, counsel on both sides exhibited contemporaneous deeds," and, on March 11, 1907, it made an order as follows:

"Certain deeds having been used and referred to with the consent of both parties on the arguments of the rule to show cause why judgment should not be entered for the defendant non obstante veredicto, and the court having considered and treated them as in evidence, it is now ordered that the said deeds be printed in full as a part of the record in this case, to wit," 17 designated deeds.

None of these deeds had been, or was entitled to be, admitted in evidence; for they were not in any way connected with the Wilson deed, or with any issue or question in the cause. In giving them consideration, the learned judge, no doubt, was misled by the initiative of counsel; but it does not follow that this court should consent to found its judgment upon writings which were not, and could not be made, a part either of the record or of the bill of exceptions. Therefore it must suffice to say of these extraneous deeds that we do not think they tended to maintain the theory of the plaintiffs, and that, no matter what might have been their apparent effect, they should have been wholly excluded from contemplation, as well as from evidence, for the reason embodied in the maxim, "Res inter alios acta alteri nocere non debet."

The judgment of the Circuit Court is reversed.